**Not for Publication**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

MERCK & CO., INC.,

        Plaintiff,

    v.                                    Civ. Action No. 05-2575  (KSH)

UNITED STATES OF AMERICA,                **OPINION**

        Defendant.

### I. Introduction

After a five-week bench trial, this Court issued an opinion rejecting plaintiff's taxpayer refund action, which sought to recoup $473 million in federal income taxes assessed for tax years 1989, 1991, and 1992 ("Opinion").  [D.E. 196.]   Now comes plaintiff Merck and Co., Inc. ("Merck")[1] requesting a new trial under Federal Rule of Civil Procedure ("FRCP") 59(a) by submitting that the Court erred in its factual findings and conclusions of law.  [D.E. 198.] Because the Court writes for the parties, it incorporates the factual and procedural history of this matter as expressed in the Opinion.  (*See* Op. 6-28.)

Merck argues that it is entitled to a new trial because (1) the Court misapplied the economic substance test and the step transaction doctrine and wrongly determined whether the swap-and-assign transactions were loans or sales and whether Algemene Bank Nederland, N.V. ("ABN") was a "conduit"; (2) the Court's decision that the swap-and-assign transactions were, in substance, loans (not sales) is contrary to the weight of the evidence; (3) the Court erred in

---

[1] Merck was formerly known as Schering-Plough Corporation ("Schering-Plough").  In D.E. 204, pursuant to the parties' proposed consent order, the Court ordered that the party formerly known as Schering-Plough, will, going forward, be referred to as Merck.

granting summary judgment to the government on Merck's disparate treatment claim; and (4) the Court committed manifest legal error by misconstruing the importance of Notice 89-21.

## II.  Standard of Review

Under FRCP 59(a)(1), in a nonjury trial, "[t]he court may, on motion, grant a new trial on all or some of the issues . . . for any reason for which a rehearing has heretofore been granted in a suit in equity in federal court." Granting such a motion "should be based upon manifest error of law or mistake of fact, and a judgment should not be set aside except for substantial reasons." 11 Wright, Miller & Kane, *Federal Practice & Procedure* § 2804 (2010). In *Pioneer Paper Stock Co. v. Miller Transport Co.*, 109 F. Supp. 502, 504 (D.N.J. 1953) (Madden, J.), the court held:

> In non-jury actions, where the trial judge presides over both the facts and the law, he may grant a new trial on motion of a party, only where he finds either an error of law or an error of fact on the face of the record. But the error must be a manifest misapprehension of the law or mistake of fact.
>
> Additionally, the principle of law that the Court must view the evidence and testimony, and the inferences reasonably deducible therefrom in the light most favorable to the party against whom the motion for a new trial is made is well established.
>
> The ultimate test as to whether or not a trial court has mistakenly exercised its discretion is not whether another judge or a court on appeal might reasonably reach a different result, but whether the action of the trial court was reasonable and based upon substantial and legally sufficient evidence then before it.

(Internal citations omitted).

## III.  Discussion

### A. Application of Legal Tests

Merck argues that the Court committed manifest legal error by selecting the wrong legal tests, and then misapplying them, in four sections of the Opinion.

*1. Loans versus Sales Test*

Merck contends that the Court committed manifest error by analogizing to *Mapco Inc. v. United States*, 556 F.2d 1107, 1110 (Ct. Cl. 1977). Despite acknowledging that a "substance-over-form" analysis is proper to determine if an assignment was a sale or a loan and that *Mapco* utilizes such a test (Pl.'s Br. 12-13), Merck seeks factually to distinguish *Mapco*. Mere disagreement with the Court's legal application does not render it a "manifest error" in the law. Granting a new trial on the basis of what a losing litigant deems a correct, but misapplied, legal test would corrupt the orderly appellate process. In *Burzynski v. Travers*, 111 F.R.D. 15, 17, n.4 (E.D.N.Y. 1986), the district court noted that

> the rigorous restrictions imposed on the granting of new trials reflect the important policies of conserving ever-dwindling judicial resources and promoting judicial efficiency. . . . Once a judgment is rendered, however, a losing litigant's proper recourse is to file and prosecute an appeal.

To the extent that Merck argues that the Court "ignored" the case law and accompanying 17 factors it provided to establish that the swap-and-assign transactions were asset sales (Pl.'s Br. 14), a fair review of the Opinion shows that the Court explicitly enumerated those factors, considered them, and ultimately declined to follow the line of reasoning represented by the non-binding case law. (*See* Op. 43-45.) On page 45 of the Opinion, the Court held "[t]he 17-factor argument . . . over-emphasizes the form of the swap-and-assign transactions. Moreover, the cases . . . that ostensibly support these factors did not involve meticulously crafted, tax-motivated, related-party transactions between a parent corporation and its controlled subsidiaries." Rather than "ignoring" the purportedly relevant factors, the Court expressly rejected them. Merck has not demonstrated where the Court committed a manifest legal error warranting a new trial.

   2. Conduit Test

Next, Merck argues that the Court committed manifest error by improperly adopting the conduit test set forth in *Enbridge Energy Co., Inc. v. United States*, 553 F. Supp. 2d 716 (S.D. Tex. 2008), and then misapplying the test's five factors to the circumstances at bar. (Pl.'s Br. 16-17.) Merck attempts to distinguish *Enbridge* from the instant case, an approach already undertaken that the Court expressly rejected. (*See* Op. 56-65.) The Opinion expressed that *Enbridge* provided a suitable test (*see* Op. 56) and the case has since been affirmed by the Fifth Circuit. *See Enbridge Energy Co. Inc. v. U.S.*, 354 F. App'x 15 (5th Cir. 2009). Merck has failed to present any new arguments as to why *Enbridge* should not apply, and merely re-hashes its arguments at trial to oppose the Court's explicit decision not to apply the reasoning in *Frank Lyon Co. v. United States*, 435 U.S. 561 (1978). Merck has failed to demonstrate that the Court committed a manifest misapprehension of the law in adopting or applying *Enbridge*. The Court will not undertake another risk assessment of ABN's position under the transactions, pursuant to *Enbridge* or any other legal formulation. *See infra*.

    3. *Economic Substance Test*

Merck contends that the Court improperly applied the objective element of the economic substance test set forth in *ACM Partnership v. Commissioner*, 157 F.3d 121 (3d Cir. 1998). (Pl.'s Br. 23-24.) Before making the finding that Merck's swap-and-assign transactions did not have an objective economic effect, the Court carefully considered Merck's position and assessed the evidence, including the expert testimony of Dr. David LaRue and Joel Finard. (*See* Op. 75-77.) Merck's motion papers are not exposing a manifest misapprehension of the law, but rather invite the Court to reach a different conclusion. After reviewing its Opinion, the Court finds that it sufficiently considered Merck's arguments regarding the application of *ACM* (*see* Op. 75-88), and Merck has not met its burden in seeking a new trial.

*4. Step Transaction Doctrine*

Finally, Merck argues that the Court committed manifest legal error in conducting its analysis under the various iterations of the "step transaction" doctrine.  It contends that if the transactions are, in substance, sales, a court should examine the substance of each single transaction, and not the series of transactions as a whole. (Pl.'s Br. 25.)  It submits that the Court pronounced that assignment payments are loans, and then, based on that pronouncement, improperly reordered the steps.  Merck's argument is premised on the supposition that the trial evidence "proved" that "the transactions are in substance sales."  (*Id.*)  In fact, however, the Court's long opinion concluded that Merck did *not* prove that its transactions were sales.  Merck's circular argument fails to demonstrate to the Court that it committed a manifest legal error in its step transaction analysis.

**B.  Conclusions from the Weight of the Evidence**

In arguing that the Court's conclusions are against the weight of the evidence, Merck contends that the Court disregarded Exhibits 1011, 21, 31, 217-220, 268-272, 617, 266-67, 251, 218-19, 36, 13, and 1424.   (Pl.'s Br. 29-30.)  It further contends that the Court disregarded portions of the testimony of representatives of ABN, Merrill Lynch and Merck; the expert witness testimony of Robert Clarke, David Ross, Andrew Onslow, Joel Finard, and Dr. John Parsons; and the testimony of Jack Wyszomierski, Jay Ludwig, and Dan Nichols, regarding Merck's nontax business purposes, in reaching the conclusion that ABN had *de minimis* risk as a result of its swap-and-assign transactions with Merck.  (*Id.* 31-32.)

The Court's findings were based on thousands of pages of documents and days of fact and expert witness testimony.  Listing each document considered to respond to Merck now is impractical and a waste of judicial resources.  (Notwithstanding, the Court notes that Merck

apparently overlooked that Exhibits 1424, 31, and 13 are explicitly referenced, *see* Op. 14, 18, 20 and 84.)  While not citing every piece of evidence before it, the Court considered each document and portion of testimony referenced here by Merck, and its Opinion, fairly read, rejected the propositions that they supported.

Insofar as Merck challenges the Court's credibility findings on Johannes den Baas's "completely illogical" "musings about the special purpose vehicle" (Pl.'s Br. 27), the Court finds that its determinations were reasonable.  As the factfinder, the Court had the obligation to evaluate live in-person testimony and video-taped deposition testimony, and the vantage point from which to do so.  To the extent that Merck's attack on den Baas's credibility is a collateral attack on the Court's findings on the "special purpose vehicle," the Court declines Merck's invitation to discredit him in order to re-visit that issue.

On a motion brought under FRCP 59(a), the Court must view the evidence and testimony, and the reasonable inferences to be drawn, in the light most favorable to the prevailing party.  *See Pioneer Paper Stock Co. v. Miller Transport Co.*, 109 F. Supp. 502, 504 (D.N.J. 1953).  The government presented significant evidence in support of its contentions and it ultimately prevailed.  Merck has failed to demonstrate that it deserves a new trial for want of evidence to support the Court's rulings.

### C. Summary Judgment Decision

In a single paragraph, Pl.'s Br. 32, Merck restates its opposition to the government's successful motion for partial summary judgment on the disparate treatment claim, which resulted in its dismissal well before trial began.  Merck presents no new evidence or argument and the Court need not revisit its decision.

### D. Construction of Notice 89-21

Finally, Merck seeks a new trial based on trial error on the issue of IRS Notice 89-21. (Pl.'s Br. 3-12.) Central to the argument, which Merck also advances in challenging the Court's step transaction analysis (*see* Pl.'s Br. 25), is the assertion that the Court's Opinion makes every swap-and-assign transaction a loan, nullifying Notice 89-21. The Court's factual findings and legal conclusions manifestly did not so find, but were instead aimed at the particular circumstances surrounding Merck's preconceived and related-party structuring of the transactions. Merck's refund suit failed not because the Court held that Notice 89-21 could never apply to notional principal contracts, but rather because the Court concluded that the transactions were loans in this case, and were thus expressly not protected from Subpart F taxation by the notice.

Moreover, despite Merck's assertions, the (1) substance-over-form; (2) economic substance; and (3) "Big Picture" analyses were discrete and independent undertakings. The Court's explication of its approach, found at pages 4-5 and 41-42 of the Opinion, make clear that the three main portions of the Opinion were separate. Additionally, before beginning its analysis under *ACM*, the Court specifically stated that "[h]aving found that under the various branches of the substance-over-form doctrine, the 1991 and 1992 swap-and-assign transactions were loans not eligible for tax-deferred treatment under Notice 89-21, the Court need go no further to render judgment for the government." (Op. 74.) In other words, the substance-over-form analysis was sufficient to support the judgment; the *ACM* and "Big Picture" analyses were therefore not intertwined with it. Finally, at the forefront of the "Big Picture" analysis, on page 88 of the Opinion, the Court made explicit that this analysis was "wholly apart" from everything it had expressed beforehand. To the extent Merck reads the "Big Picture" section as actually finding a

"clash" between Notice 89-21 and Subpart F, a reading of the entire Opinion does not support the claim.

Merck's presentation on Notice 89-21 demonstrates that Merck does not agree with the Court, but does not demonstrate for FRCP 59(a) purposes that the Court's ruling was not "reasonable and based upon substantial and legally sufficient evidence." *Pioneer*, 109 F. Supp. at 504.

## IV.  Conclusion

The Court **denies** Merck's motion for a new trial under FRCP 59(a). An appropriate order will be entered.

/s/Katharine S. Hayden
Katharine S. Hayden, U.S.D.J.